**MURRAY & SORENSON, Inc. et al. v. UNITED STATES.**

No. 4667.

United States Court of Appeals First Circuit.

Sept. 23, 1953.

**120**

Charles A. Kiernan, Providence, R. I. (Peter W. Kiernan, Providence, R. I., on the brief), for appellants.

Melvin Richter, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Washington, D. C., Edward M. McEntee, U. S. Atty., Joseph L. Breen, Asst. U. S. Atty., Providence, R. I., and Paul A. Sweeney, Marvin C. Taylor and John A. Ryan, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and FORD, District Judge.

**WOODBURY, Circuit Judge.**

This is an appeal from a judgment entered for the United States after trial without a jury of a suit brought for the recovery of forfeitures and double damages under the False Claims Statute, R. S. §§ 3490–3492, 31 U.S.C.A. §§ 231–233, which, as embodied in the Code, is quoted in material part in the margin.[1] The essential evidentiary facts as found by the District Court, as to which there is no real dispute, can be briefly stated.

One Hanson[2] was employed just prior to and at least during the early months of the late war as a purchasing agent by two contractors who were building a large naval base for the United States under cost-plus-a-fixed-fee contracts at Quonset Point, Rhode Island. It was Hanson's duty as purchasing agent to solicit competitive bids for various materials, including plumbing fixtures, required in the performance of the contracts, and when a bid was received, to submit a report thereon with recommendations to an officer of the United States Navy on duty at the project. After approval of a bid by the naval officer an order was issued by Hanson's employer, the contractor, to the successful bidder; and when the order was filled, the Navy Department paid the contractor and the contractor paid the supplier.

Hanson, in his capacity of purchasing agent for the contractors at Quonset Point, and apparently previously when acting in a comparable capacity for other employers, had done a substantial amount of business over a period of years with the corporate defendant—a manufacturer of plumbing fixtures—through the individual defendant, George W. Sorenson, its secretary and treasurer. In June 1942, the latter made Hanson a present of $35, as Sorenson said, "to go out on my account," and early in July and again in August the corporate defendant at Hanson's invitation to Sorenson submitted bids for quantities of faucets. The bid for the first lot was at $4.26, and for the second lot at $4.25 apiece. Both bids were accepted through the procedure outlined above, the faucets ordered were supplied by the corporate defendant, and they were paid for, eventually by the United States, in the usual way. In early September Hanson asked George Sorenson over the telephone for a price on another lot of faucets, and he quoted the same price of $4.25 each. Hanson then told Sorenson that his price was very low and that $5.00 apiece would be a fair price for the faucets. Thereupon Sorenson raised the price to $5.00 and obtained the order, which was filled by the corporate defendant, and the faucets were paid for in due course. Later in September, and again in October, there were two more like transactions in faucets at $5.00 each.

Sometime in late September Hanson visited Sorenson in his office, the faucets transactions were discussed, and Sorenson gave Hanson $150 in cash, telling the latter to enjoy himself with it, the reason for the gift being, as Sorenson

---

**1.** "Any person not in the military or naval forces of the United States * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, * * * account [or] claim, * * * knowing the same to contain any fraudulent or fictitious statement or entry, or who enters into any agreement, combination, or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit * * *."

**2.** Hanson was originally joined as a party defendant, but he died pending trial, and as to him the suit was ordered dismissed.

said in a statement he later gave to an agent of the Federal Bureau of Investigation, that he felt obligated to Hanson for securing a higher price for the faucets. Some time between three and six weeks later Hanson visited Sorenson again. On this occasion there was no mention of faucets, but Sorenson gave Hanson $250, also in cash. At Christmas time, 1942, Sorenson gave Hanson a present of six bottles of whisky.

The District Court did not make any categorical finding of deliberate presentations by the defendants of false, fictitious or fraudulent claims against the United States for approval by a civil, military, or naval officer. Nor did the court below make any specific finding with respect to the deliberate use by the defendants, in furtherance of the prosecution of such claims, of any false documents containing fraudulent or fictitious statements or entries. It found, however, that Sorenson knew that the faucets were charged by the contractors to the United States under the cost-plus-a-fixed-fee contracts, and on the facts outlined above, it found that Hanson, Sorenson and the corporation had conspired with one another to defraud the United States. Furthermore, the court found that the payments made by Sorenson to Hanson, for which Sorenson was reimbursed by the corporation, were made in furtherance of that conspiracy.

Two questions are presented by this appeal. The first arises in consequence of the striking by the court below of a defense of *res judicata* interposed by the defendants; the second is whether the evidentiary facts found by the court below support its conclusion of a violation of the False Claims Statute.

 It appears that the individual defendant, referred to herein sometimes as Sorenson, and Hanson were indicted, tried by jury and acquitted in an earlier criminal prosecution based on the same facts as the present complaint. This acquittal, it is said, adjudicated the issues and bars the present suit. We do not agree.

In the first place the corporate defendant herein was not prosecuted criminally, and hence it can be argued that the defense of *res judicata* is not applicable to it, for as to it there was no prior adjudication of the issues. In the second place, the defense of *res judicata* was not mentioned in the appellants' statement of points on appeal. There is, however, a broader ground upon which to reject this defense.

There can be no doubt that a prior acquittal, or conviction for that matter, is a bar to a subsequent action based upon the same facts the object of which is also punishment, because the second action would subject the defendant to double jeopardy forbidden by the Fifth Amendment. Helvering v. Mitchell, 1938, 303 U.S. 391, 398, 58 S.Ct. 630, 82 L.Ed. 917; United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 548 et seq., 63 S.Ct. 379, 87 L.Ed. 443. But it is just as firmly established that the difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata* as a bar to a civil suit subsequent to an acquittal in a criminal prosecution grounded on the same facts, for the reason that the prior acquittal only adjudicated that the proof offered in the criminal case was not enough to establish the guilt of the accused beyond all reasonable doubt. Helvering v. Mitchell, supra, 303 U.S. at page 397, 58 S.Ct. at page 632; United States v. National Ass'n of Real Estate Boards, 1950, 339 U.S. 485, 493, 70 S.Ct. 711, 94 L.Ed. 1007, and cases cited. Thus, although for a different reason, the question presented by the plea of *res judicata* in this case is the same as the question presented by a plea of double jeopardy, that is, whether the object of the proceeding is to inflict punishment or to obtain redress. And the Supreme Court of the United States in the leading case of United States ex rel. Marcus v. Hess, supra, answered this question categorically. It said, in holding that a prior prosecution for conspiracy to defraud the

government ending in the imposition of a fine after a plea of *nolo contendere* did not bar a suit such as this on the ground that it constituted double jeopardy in violation of the Fifth Amendment, that suits under the False Claims Statute were not penal, but instead imposed a civil sanction in that their purpose was "to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." 317 U.S. at pages 551–552, 63 S.Ct. at page 388.

It follows that the court below correctly struck the defense of *res judicata*.

We turn now to the other question before us on this appeal.

It is true that Sorenson testified on the stand that he increased the price of faucets from $4.25 to $5.00 apiece because of unforeseen difficulties in manufacture and higher-than-anticipated costs of raw material. But there is also evidence from his statement to the agent of the Federal Bureau of Investigation referred to previously that Sorenson increased the price of the faucets when Hanson told him that his original price was very low and that $5.00 apiece would be a fair price, and furthermore that Sorenson made Hanson presents out of gratitude for the suggestion. This is enough to support the conclusion that Hanson, Sorenson, and the corporation acting through Sorenson, had at least a tacit understanding with one another as a consequence of which a higher price was paid for the faucets by the government contractors, and through them by the government itself, than would have been paid for the faucets had there been no such understanding. But is it enough to support the finding made by the court below of a conspiracy to defraud the United States in violation of the False Claims Statute?

The fact that the claims in this case were not presented directly to the government, but were made to it indirectly through the contractors, does not prevent recovery under the False Claims Statute.

United States ex rel. Marcus v. Hess, supra. Furthermore, we infer from the result reached in Hess that it is not essential to recovery under the statute for the United States to prove that it paid an unreasonably high price. We think this conclusion follows from the fact that the colluding contractors whose conduct was under scrutiny in the Hess case selected for submission as their lowest bid, a bid at the amount of the average of the bids figured by the contractors independently. The present case, however, is not a case of collusive bidding by ostensible competitors like the one last cited. See also McMullen v. Hoffman, 1899, 174 U.S. 639, 19 S.Ct. 839, 43 L.Ed. 1117. Nevertheless the tendency and character of the understanding between Hanson and the defendants is just as mischievous to the public, for it, like a secret agreement between bidders, has the necessary effect of increasing the price which the government eventually has to pay. And in this case there is an element of falsehood comparable to that in Hess. In the Hess case the Supreme Court found the essential element of fraud in the collusive bidding indulged in by the contractors. Furthermore it said, 317 U.S. on page 543, 63 S.Ct. on page 384 that "This fraud did not spend itself with the execution of the contract. Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid * * * " by the government to the contractors. In this case there was the secret tip given by Hanson to Sorenson that the latter could raise his bid on behalf of the corporate defendant for faucets to a price higher than would otherwise have been submitted. And the secrecy of this suggestion to bid at a higher figure distinguishes this case from United States ex rel. Weinstein v. Bressler, 2 Cir., 1947, 160 F.2d 403, wherein identical bids at the highest figure the government was willing to pay were made on the basis of an agreement among the defendants, who were hat manufacturers and labor union officials, which agreement was fully disclosed to, if not expressly sanctioned by,

the government's procurement officer.[3] That is to say, in Hess there was an implied false representation that the bids were competitive, and in this case there was an implied false representation that the bids were at a figure which the corporate defendant would have submitted in competition instead of at a somewhat higher figure suggested by the contractors' purchasing agent to Sorenson, whereas in Bressler there was no false representation with respect to the bid for hats for the reason that the procurement officer for the government was fully informed as to the basis upon which the bid was made.

The judgment of the District Court is affirmed.

3. Likewise there was no false representation as to the basis for the bids under consideration in United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 1942, 131 F.2d 545, affirmed by an equally divided court, 1943, 320 U. S. 711, 64 S.Ct. 187, 88 L.Ed. 417.