THE DEPARTMENT OF PUBLIC AID, Plaintiff-Appellant, *v.* CLARA GREENLEE, Defendant-Appellee.

Second District   No. 77-8

Opinion filed July 3, 1978.

William J. Scott, Attorney General, of Chicago (Mary Stafford, Assistant Attorney General, of counsel), for appellant.

Ludolph J. Wilson, of Wilson, Staben & Wilson, and Thomas Gureitz, both of Waukegan, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
This appeal involves the construction of section 11—21 of the Public

Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 11—21). The defendant contends the State's application of section 11—21 places her in double jeopardy, contrary to the Illinois and United States constitutions.

The defendant applied for and received public aid. Later, she failed to report to the Department of Public Aid that she had become employed, so that she continued to receive public aid to the extent $4,053.12, to which she was not entitled.

Upon learning of the defendant's failure to report her earnings from employment, the State indicted the defendant under section 11—21 of the Public Aid Code, which states:

"Any person who by means of any false statement, willful misrepresentation, or failure to notify the county department or the local governmental unit, as the case may be, of a change in his status as required by Sections 11—18 and 11—19, for the purpose of preventing the denial, cancellation or suspension of his grant, or a variation in the amount thereof, or through other fraudulent device obtains or attempts to obtain, or aids or abets any person in obtaining financial aid under this Code to which he is not entitled, shall be guilty of a Class A misdemeanor."

On May 19, 1975, the defendant pleaded guilty to a charge of fraud under section 11—21 and was sentenced to one year conditional discharge. On June 26, 1975, the Department of Public Aid filed a complaint against the defendant under section 11—18 of the Public Aid Code, which provides as follows:

"It is the duty of every applicant and recipient to notify promptly the county department or the supervisor of general assistance, as the case may be, of any change of status with respect to his property, or need, or family composition, amount of income, money contributions and other support, from whatever source, occurring, in the case of an applicant, between the time of his filing an application for financial aid and the issuance of the grant, and, in the case of a recipient, occurring at any time during the period that he receives financial aid.

If an applicant or recipient fails to give prompt notice of changes in his circumstances, and as a result financial aid is given to which he is not entitled, he shall be liable to the county department or to the local governmental unit, as the case may be, for refunding a sum of money up to but not in excess of the entire amount of financial aid provided. Unless the refund is made the amount may be recovered in a civil action."

In addition to providing that a person who receives public aid he is not entitled to by reason of failure to report a change in status, shall be guilty of a Class A misdemeanor, section 11—21 also contains a paragraph

making a false statement or willful misrepresentation, made for the purpose of obtaining public aid, punishable as perjury, and in a third paragraph provides (a) for the recovery in a civil action, of any amounts of public aid wrongfully received and (b) further provides as follows:

"If fraud is proven in such action, the court may as a penalty assess an additional sum of money, up to but not in excess of the entire amount of aid provided, against the recipient or against any person who wilfully aided the recipient. If assessed, the penalty shall be included in any judgment entered for the aid received, and paid to the county department or the local governmental unit, as the case may be."

Under the language quoted in (b) above, the State sought and was granted leave to amend the original complaint to add a second count in pertinent part as follows:

"10. That Section 11—21 of Chapter 23 of Illinois Revised Statutes provides in part that if fraud is proven the Court may assess as a penalty an additional sum of money up to but not in excess of the entire amount of aid provided against the recipient or any person who willfully aided the recipient.

WHEREFORE Plaintiff prays the Court assess the sum of Four Thousand Fifty Three and 12/100 ($4053.12) as a penalty in addition to the judgment demanded in Count I."

The defendant moved for summary judgment on count II of the amended complaint on the ground that she had been indicted and had pleaded guilty and had been sentenced to one-year conditional discharge for the same offense, which sentence she had served. Therefore, she contended, the imposition of an additional penalty equal to the amount of the judgment for aid wrongfully received, and for which she was civilly liable, would amount to double jeopardy—that is, she would suffer the punishment of conditional discharge and the punishment of a penalty equal to the judgment for aid wrongfully received, both for the same offense.

The trial court agreed with the defendant's contention and granted the motion for summary judgment on count II, stating in his order that the State had exercised its election to punish the defendant for a misdemeanor by subjecting her to conditional discharge and therefore the only remedy remaining to the State was to sue in a civil action for the amount of aid wrongfully received, which action the State had already initiated.

The State in this appeal contends that that portion of section 11—21 authorizing a penalty up to the amount of public aid received is not penal but merely remedial in nature and therefore the defendant was not subjected to double jeopardy in being assessed the penalty provided for

in such paragraph. The defendant contends the provision in question is penal in nature and if upheld, in addition to the criminal sanction of conditional discharge for the same offense, would constitute double jeopardy.

We find no Illinois cases on the exact point involved here. The State cites *People v. Brooks* (1976), 65 Ill. 2d 343, to support its contention that a person who defrauds the Department of Public Aid is subject to both criminal sanctions and civil liability. That was not the main issue in the *Brooks'* case, but even if some of the general language of that case can be construed as sanctioning both a criminal penalty and a civil action for damages, for the same public aid fraud, that is not the issue here. The issue is the constitutional one of double jeopardy—that is, whether already having been convicted and punished for a misdemeanor under section 11—21 and having judgment entered against her for the amount of the aid fraudulently received, in addition to the punishment for the misdemeanor, the defendant can be assessed another penalty equal to the amount of aid fraudulently received.

■■ Under the modern authorities the question is whether the fraud penalty provision of the statute is one designed for punishment or merely an additional civil remedy which is remedial in nature. If the former, the additional penalty constitutes double jeopardy—if the latter, it is only additional damages and is outside the double jeopardy prohibition.

This is the issue discussed and decided in the leading case of *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630. In that case Mitchell was charged with fraudulent underpayment of income tax and was indicted under the Revenue Act of 1928. In addition, the Commissioner of Internal Revenue notified Mitchell that there was a deficiency in his income tax return of $748,709.84 and a 50% penalty would be added under section 293 of the Revenue Act. Subsequently, Mitchell was tried and acquitted under the criminal statute and the Court of Appeals held that the acquittal was a bar to subsequent collection of the 50% penalty. On appeal, the United States Supreme Court reversed, in an opinion by Mr. Justice Brandeis, holding that the question was whether the 50% penalty was a criminal sanction designed for punishment or was merely a remedial statute designed to protect the United States revenue and reimburse the Government for the heavy expense of fraud investigations. The court recognized that there was a conflict in the cases, but decided that the deficiency penalty was intended as a civil remedy, rather than a criminal sanction, therefore the imposition of the penalty was not barred under the doctrine of double jeopardy. This case was closely followed by the opinion in *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 87 L. Ed. 443, 63 S. Ct. 379, which again rejected a similar double jeopardy plea.

This trend has been followed in later United States Supreme Court cases, see *One Lot Emerald Cut Stones v. United States* (1972), 409 U.S. 232, 34 L. Ed. 2d 438, 93 S. Ct. 489, where the court held that an acquittal of a criminal charge of smuggling articles into the United States, without going through Customs' procedures, did not preclude the imposition of a judgment of forfeiture of the emeralds involved under section 1497 of the Tariff Act of 1930 (19 U.S.C.S. §1497). The court said:

"The question of whether a given sanction is civil or criminal is one of statutory construction. [Citation.] It appears that the §1497 forfeiture is civil and remedial, and, as a result, its imposition is not barred by an acquittal of charges of violating §545." (409 U.S. 232, 237, 34 L. Ed. 2d 438, 443, 93 S. Ct. 489.)

See also *Murray & Sorenson v. United States* (1st Cir. 1953), 207 F.2d 119, 42 A.L.R. 2d 628, where the United States Court of Appeals, in rejecting a plea of double jeopardy, where the defendants were tried and acquitted in a criminal prosecution, then subsequently sued for damages under the False Claims Statute for bribery and conspiracy in connection with certain Government contracts—rejected a similar contention of double jeopardy. The court said:

"* * * Thus, although for a different reason, the question presented by the plea of *res judicata* in this case is the same as the question presented by a plea of double jeopardy, that is, whether the object of the proceeding is to inflict punishment or to obtain redress. And the Supreme Court of the United States in the leading case of United States ex rel. Marcus v. Hess, supra, answered this question categorically. It said, in holding that a prior prosecution for conspiracy to defraud the government ending in the imposition of a fine after a plea of *nolo contendere* did not bar a suit such as this on the ground that it constituted double jeopardy in violation of the Fifth Amendment, that suits under the False Claims Statute were not penal, but instead imposed a civil sanction in that their purpose was 'to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole.' " 207 F.2d 119, 122-23, 42 A.L.R. 2d 628, 632.

In the absence of any Illinois cases construing section 11—21 of the Public Aid Code from the standpoint of double jeopardy, we are inclined to reach, by analogy, the same results as the United States Supreme Court cases cited above. That is to say, that we view the statute in question as being designed to afford a civil remedy—that of protecting the State's welfare funds against the depletions resulting from fraudulent claims and expenses of investigating and recouping them—rather than having the

intent of punishment for a crime. Under this view of the statute, the penalty is not to be regarded as a punishment in addition to the indictment for failure to report a change in status, but rather as additional damages recoverable in a civil judgment. Damages are remedial in nature and where the main thrust of the statute is to recoup damages, rather than to inflict punishment, there is no double jeopardy by reason of the fraud penalty provision.

■■ We find the fraud penalty provision of section 11—21 of the Public Aid Code to be remedial in character and not a criminal sanction and accordingly we reverse the judgment of the circuit court of Lake County and remand the case with instructions to reinstate count II of the complaint.

Reversed and remanded with directions.

GUILD and WOODWARD, JJ., concur.