**UNITED STATES of America, ex rel Charles K. HOLDER, Plaintiff,**

**v.**

**SPECIAL DEVICES, INC., Defendant.**

No. CV 99–8298 SJO.

United States District Court,
C.D. California.

Dec. 4, 2003.

Kari A. Keidser, Fainsbert, Mase & Snyder, Steven R. Tekosky, Tatro, Tekosky, Sadwick & Mendelson, Mark A. Byrne, Byrne & Nixon, Jeffery W. Johnson, Johnson & Higgin, Gary Plessman, Los Angeles, CA, for plaintiff.

Joseph O. Click, Susan Leigh Watson, Jeanne M. Grasso, Dyer, Ellis & Joseph, Washington, DC, George B. Newhouse, Jr., Nicole M. Duckett, Thelan, Reid & Priest, Los Angeles, CA, for defendant.

## ORDER RE MOTION FOR RECONSIDERATION AND MOTION TO CONTINUE TRIAL DATE

OTERO, District Judge.

Defendant Special Devices, Inc. ("SDI" or "Defendant") moves for reconsideration of this Court's Opinion and Order of October 6, 2003, denying SDI's Motion for Summary Judgment. SDI presents no new argument, facts or law. Instead, Defendant contends that this Court failed to consider material facts. (Motion for Reconsideration P. & A., p. 3; *quoting* Local Rule 7–18). The Court considered and rejected the facts and argument presented by SDI in the instant motion when it denied SDI's Motion for Summary Judgment. Accordingly, the Motion for Reconsideration is not in compliance with Local Rule 7–18. Nevertheless, the Court would like to take this opportunity to revise and clarify its earlier opinion. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the Court finds that this matter is appropriate for decision without oral argument.

SDI argues that, in its earlier Order and Opinion, the Court failed to heed salient material facts in the record and that the Court's analysis is logically inconsistent. (*See* id. at p. 2). The gist of SDI's argument is that this Court recognized *United States ex rel. Hopper v. Anton,* 91 F.3d 1261 (*hereinafter "Hopper"*) as the controlling authority in the instant case, and then mistakenly analyzed that case in light of undisputed facts. (*See* Motion for Recon., p. 2, ll.3–15.) However, this Court never held that *Hopper, supra,* is the controlling authority. In reality, this Court distinguished *Hopper* and showed that it is not the controlling authority. Indeed, the Court found the *Amicus Curiae* brief filed by the United States of America to be a more accurate reflection of the controlling law.[1] Furthermore, this Court recognized that even if *Hopper* was controlling, Defendant SDI would not be entitled to summary judgment. There was neither incon-

---

**1.** The Court decided to issue a revised Order and Opinion to address the points raised by the *Amicus* Brief.

sistency nor contradiction. But the Order could have been written more clearly. Consequently, the Court has written another Opinion, *infra*, to clarify its earlier Opinion and Order. Having carefully considered the record, the arguments, declarations and documentary evidence submitted by both parties, as well as the points and authorities submitted the United States of America, Defendant's Motion for Reconsideration is hereby DENIED.

There is another motion presently before the Court. Plaintiff filed an *ex parte* request to shorten time for hearing on its Motion to Continue Trial Date. The *ex parte* request was granted and the hearing was set for November 25, 2003. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the Court found that this matter was appropriate for decision without oral argument. Accordingly, the matter was taken off calendar and placed under submission. For the reasons stated more fully herein, Plaintiff's Motion to Continue Trial Date is hereby GRANTED.

## I. *BACKGROUND*

Charles K. Holder filed this action on behalf of Plaintiff, the United States of America on August, 16, 1999. The complaint was filed *in camera* and under seal. The government conducted a two-year investigation while obtaining numerous extensions of time. The complaint was unsealed on August 22, 2001, and served on Defendant on December 20, 2001. Plaintiff is suing to recover damages, civil penalties and other relief under the False Claims Act, 31 U.S.C. § 3729.

The Plaintiff, Mr. Charles K. Holder, is a former employee of SDI. He was hired by SDI on April 15, 1999 as Corporate Director of Safety for SDI's Newhall and Moorpark facilities. (Holder Decl., ¶ 1) He held that position for approximately four months. (*Id.*) Mr. Holder alleges that SDI violated environmental and health and safety requirements mandated under federal, state, and local laws. (*Id.* at ¶ 2) Mr. Holder claims that he brought the instant suit after first raising his concerns to his supervisors. (*Id.*) He contends SDI filed false claims in connection with a series of government contracts by failing to adhere to contractual obligations that require SDI to follow environmental and health and safety regulations.

In its Motion for Summary Judgment, Defendant SDI argued that Plaintiff failed to meet the heightened pleading requirements for fraud required by Federal Rule of Civil Procedure, Rule 9(b). (MSJ P. & A., pp. 1–2) On March 25, 2002 Judge Ronald S.W. Lew of the United States District Court for the Central District of California denied SDI's Motion to Dismiss Plaintiff's Complaint. SDI's earlier Motion to Dismiss raised many of the same arguments and issues presented in the Motion for Summary Judgment and in the instant Motion for Reconsideration. This Court rejected SDI's arguments in denying its Motion for Summary Judgment and the Court again rejects SDI's arguments with respect to the instant Motion for Reconsideration.

### A. *The Earlier Motion to Dismiss*

In its Motion to Dismiss, SDI argued (1) that the complaint failed to state a claim for which relief can be granted; and (2) that the complaint failed to comply with the requirements of Fed.R.Civ.P. 9(b) because it failed to identify with particularity the parties, dates, and subject-matter of the contracts and subcontracts between SDI and the government. Judge Lew's order denying the motion simply states that "[a]fter due consideration of the briefs submitted by counsel and all matters presented to the Court, the Court HEREBY ORDERED THAT Defendant Special De-

vices, Inc.'s motion to dismiss be denied." (Order of March 25, 2002, p. 1) At the hearing, Judge Lew found:

> that the Plaintiff's Complaint fails to allege fraud with sufficient particularity as required by the normal application of the Federal Rules of Civil Procedure 9(b). However, the court finds that the Plaintiff is entitled to a lenient application of the heightened pleading standards on grounds that the information supporting his claims is clearly in the defendant's exclusive possession. So, therefore, at this point in time the Motion to Dismiss is denied. I believe that an appropriate time after discovery is had maybe some other motions will resolve this case, but clearly the nature of this case is one where I have to deny the motion at this time. (Click Decl., Ex. 3, Hr'g Tr., p. 20, ll. 1–12)

The Court made no other substantive comments on the merits of the case or the moving parties' arguments. (*See* id.)

In its opposition to the motion to dismiss, Plaintiff argued for a relaxed application of Rule 9(b). Citing *United States ex rel. Lee v. SmithKline Beecham In.*, 245 F.3d 1048, 1052 (9th Cir.2001), Plaintiff argued that Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where evidence of fraud is within defendant's exclusive possession. (Opp'n. Motion to Dismiss, pp. 7–9) The Court apparently found Plaintiff's argument persuasive. (*See* Click Decl., Ex. 3, Hr'g Tr., p. 20, ll. 1–12.)

### B. *The Parties*

SDI is a Delaware corporation. It owns or used to own facilities in Newhall and Moorpark, California. SDI's Newhall facility was partially located on United States government property, which was leased to SDI. SDI manufactured explosive and pyrotechnic devices for use in products, which are sold to the United States Department of Defense, the National Aeronautics and Space Administration, other federal agencies and other government contractors. (Plaintiff's Statement of Undisputed Fact, *hereinafter* PSUF, No. 1) SDI hired Plaintiff Holder on April 5, 1999 as Corporate Director of Safety for the Newhall and Moorpark facilities. (*Id.* No. 2)

According to Plaintiff Holder, within weeks of his employment, he discovered SDI was systematically violating the environmental, health, and safety requirements mandated under federal, state and local laws. Plaintiff claims he made his concerns known to his supervisor and others at SDI. By late July of 1999, Plaintiff reported the violations to relevant environmental regulatory agencies, and similarly informed the F.B.I., the United States E.P.A., Department of Justice, and the Los Angeles County Fire Department about his concerns. (*See* Compl. p. 6)

Over the past twenty years, SDI entered into several contracts and/or subcontracts with the federal government to supply products. These contracts and/or subcontracts required SDI to comply with environmental and health and safety laws, such as the Clean Air Act, Clean Water Act, Emergency Planning and Community–Right–to–Know Act, and Resource Conservation and Recovery Act. (Compl. ¶ 9; *see also* Holder Decl., Ex. A)

In Plaintiff's complaint, he claims to have personal knowledge that SDI certified to its prime contractor and to the federal government that it was in compliance with these laws, when it was not, in order to receive payment. (*See* e.g. Compl. ¶ 47) Plaintiff seeks damages, civil penalties and other relief from SDI under the False Claims Act, 31 U.S.C. section 3729. (*Id.* at pp. 27–29)

### C. *Motion for Summary Judgment*

In its Motion for Summary Judgment, SDI argued that the case should be dismissed because "[t]he requisite factual basis is clearly missing .... Holder has not made the particular allegations required by Rule 9, and despite the considerable latitude accorded to him by the Court, cannot make such allegations consistent with Rule 11." (P. & A., p. 2) The basis for SDI's argument is that the complaint failed to allege fraud with adequate particularity because it did not identify a single contract in which SDI made a claim for payment based upon a false certification. (*Id.* p. 4) SDI claims that there has been substantial subsequent discovery. (*Id.* p. 6) According to SDI, in Phase I Plaintiff was provided with SDI's contracts and subcontracts involving the federal government, along with certifications of compliance with government regulations. (*Id.*) SDI claims that it produced "tens of thousands of pages of SDI contracts and papers." (*Id.* p. 7)

Plaintiff subsequently identified 18 pertinent contracts that were produced during the first phase of discovery. Each of these contracts includes provisions incorporating various Federal Acquisition Regulations ("FAR") provisions, requiring SDI to comply with various environmental, health or safety laws. (P. & A., p. 8) According to SDI, however, the contracts do not contain a provision requiring certification of compliance as a condition to payment. Citing *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266–67 (9th Cir.1996), SDI argues that the contracts must contain a provision requiring certification of compliance if SDI is to be held liable under the False Claims Act. (P. & A., p. 8) Without such a provision, SDI argues, Plaintiff cannot show that SDI made a false claim. (*Id.* p. 9) SDI quotes *Hopper,* 91 F.3d at 1266–67:

violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit.

SDI also argues that Plaintiff cannot produce evidence on another vital element— that SDI knowingly submitted a false claim. (P. & A., pp. 10–11 n. 6)

■ Plaintiff opposed the motion on the grounds that there are controverted issues of fact. Plaintiff claims that SDI's Fact No. 8 from its Uncontroverted Facts and Conclusions of Law is subject to controversy. The relevant portion of Fact No. 8 states: "None of the contract documents provided to Holder pursuant to the August 2, 2002 stipulation contained provisions that required SDI to certify compliance with any environmental, health or safety law as a condition to payment." This point may be controverted. But it is a question of law for the Court to decide. *United Ass'n Local 38 Pension Trust Fund v. Aetna Casualty & Sur. Co.,* 790 F.2d 1428, 1430 (9th Cir.1986)["[i]f the interpretation of the language of the contract were the sole issue, the court might be able to resolve the matter on summary judgment for only questions of law would be in controversy."] Plaintiff also argued that summary judgment is inappropriate because SDI has not actually responded to any document production requests; and SDI will introduce at trial contractual provisions other than the 18 contractual provisions discussed in SDI's motion for summary judgment. (Opp'n. at pp. 3–4)

## II. *LEGAL STANDARD*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for granting a motion for summary judgment. It states in part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c) (2003).

This standard has been explained by the Supreme Court of the United States in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. *See Celotex Corp., supra,* 477 U.S. at 331–32, 106 S.Ct. 2548. When the moving party does not bear the burden of proof at trial, it must point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. In *Anderson,* the court set out the requisites needed to show there is no genuine issue as to a material fact.

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court also held that "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.*

Regarding the existence of a genuine issue of material fact, the court held that, summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, the court also noted that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. The nonmoving party has the burden of producing operative facts, and the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. If the operative facts are not presented, summary judgment is appropriate.

Once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. However, any inferences from the underlying facts must be viewed in light most favorable to the nonmoving party. *Id.* at 587, 106 S.Ct. 1348.

In *Celotex,* the court explained that the nonmoving party must designate specific facts showing a genuine issue for trial. Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The moving party is not required to prove the absence of a genuine issue of fact, even with respect to an issue on which the nonmoving party bears the burden of proof. *id.* at 325, 106 S.Ct. 2548. "Instead ... the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* The *Celotex* court also stated that "[o]ne of the princi-

pal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses", *id.* at 323–24, 106 S.Ct. 2548, and that the summary judgment procedure should not be regarded as a "disfavored procedural shortcut" but should be viewed as an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327, 106 S.Ct. 2548.

"[I]t is not [the task] of the district court, to scour the record in search of a genuine issue of triable fact. [The courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996). *See also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.2001) ["The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."]

## III. ANALYSIS

### A. Certification of Compliance

Defendant SDI cites *Hopper, supra,* 91 F.3d at 1266 for the principle that "[v]iolations of laws, rules or regulations do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." (Motion for Reconsideration P. & A., at p. 3).

In *Hopper*, a teacher sued the Los Angeles Unified School District ("LAUSD") under the *qui tam* provisions of the FCA. The basis of her complaint was that LAUSD accepted federal funding for special education programs but did not observe regulatory guidelines related to the program. *See Hopper*, 91 F.3d at 1264. For example, the plaintiff in *Hopper* com-

plained that evaluations of students were made by special education teachers rather than the students' classroom teachers in violation of California Education Code § 56341 and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (1994); and that the evaluation process was prolonged in order to avoid placing students into special education classes. *Id.* at 1263 & 1264. Prior to bringing suit, the plaintiff in *Hopper* complained to her superiors. *Id.* at 1263. After her concerns were not addressed, she reported the matter to the California State Department of Education (CDOE). On several occasions, the CDOE found that the LAUSD was not in compliance. *Id.* The CDOE eventually warned that continued failure to comply with regulations could result in a curtailment or recovery of state funds from the LAUSD. *Id.*

> In rejecting plaintiff's claim in *Hopper*, the Ninth Circuit remarked:

> It is not the case that any breach of contract, or violation or regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA... some request for payment containing falsities made with scienter (i.e., with knowledge of the falsity and with intent to deceive) must exist. *Hopper,* 91 F.3d at 1265.

The *Hopper* court explained that there were two major questions related to liability in false certification cases brought under the False Claims Act: "(1) whether the false statement is the cause of the Government's providing the benefit; and (2) whether any relations exist between the subject matter of the false statement and the event triggering Government's loss." *Id.* at 1266.

### B. Hopper is Distinguishable

In its Order and Opinion denying SDI's Motion for Summary Judgment, the Court

distinguished *Hopper* on the following grounds. The key difference between *Hopper* and the instant case is that in *Hopper*, there was little or no relationship between regulatory compliance and the receipt of funding from the government. *Id.* at 1266. In *Hopper*, federal funds were assigned on a per student basis. California apportioned funding by looking at the number of special education personnel, and other factors, rather than on a per student basis. *Id.* The LAUSD was not required to certify compliance with federal laws or regulations. *Id.* at 1267. The funding was dispersed without any bidding or competition. *See* id. In view of these facts, the Ninth Circuit held that the alleged regulatory violations did not amount to a false claim because there was no actionable false certification filed. *Id.* (emphasis added). Indeed, the LAUSD did not have to file any certifications at all. *Id.*

In its Motion for Reconsideration, SDI argues that the grant of government funds in *Hopper* was actually contingent on compliance with government regulations. (Motion for Recon., at pp. 8–9.) The plain language of the opinion in *Hopper* is contrary to SDI's argument. The Ninth Circuit stated "Mere regulatory violations do not give rise to a viable FCA action. *This is particularly true here where regulatory compliance was not a sine qua non of receipt of state funding.*" *Hopper*, 91 F.3d at 1267 (emphasis added). No matter how *Hopper* is interpreted, it could not be more clear that the defendant in *Hopper* did not have comply with regulations in order to receive government funds. *See id.*[2]

**2.** The Ninth Circuit explained the mechanism for funding in *Hopper:*

> False certification cases differ from mischarging and false negotiation cases. In these cases, parties avail themselves of benefits of some type, such as loan guarantees or agricultural supports, through false statements which create eligibility that otherwise would not exist. Two major questions relating to liability in these cases are: (1) whether the false statement is the cause of the Government's providing the benefit; and (2) whether any relation exists between the subject matter of the false statement and the event triggering Government's loss. John T. Boese, *Civil False Claims and Qui Tam Actions* 1–29 to 1–30 (1995).
>
> In this instance, the School District did not make a certification which could constitute a "false claim" under the Act, much less a false statement which caused the United States to provide an improper benefit. *A brief review of the federal government's mechanism for funding special education illustrates this.* Each year, the federal government allocates IDEA funds to California and other states for special education programs to ensure a free appropriate public education for children with disabilities. 20 U.S.C. § 1400(c)(1994). *Federal money for special education is assigned to the states on a per-student basis.* 20 U.S.C. § 1411(a) (1994). However, *California apportions the money among its school districts based upon other information, including the number of special education personnel and other factors, rather than on solely a per-student basis. This information is listed in the J–50 form every district must submit to the CDOE four times a year. At the end of the year, each district submits to the CDOE a form J–380 either to request reimbursement for money spent in excess of budget or to pay back excess money received to which it is not entitled.*
>
> *Hopper*, 91 F.3d at 1266 (emphasis added). The alleged regulatory violations in *Hopper*, however, did not have any relation with the form J–380 or any other document that could be deemed equivalent to the documents and contracts at issue in the instant case. *See Hopper*, 91 F.3d at 1262.
>
> Another portion of the above quoted passage is also important. The Ninth Circuit in *Hopper* stated that one of the major questions controlling the determination of liability is "whether any relation exists between the subject matter of the false statement and the event triggering Government's loss." *Id.* In the instant case, as the facts are plead in the complaint, it is clear that there is a relation between the subject matter of the false statement and the event triggering Government's

In the instant case, by contrast, the contract unequivocally stated that SDI was required to "comply with all applicable Federal, State and local laws." (*See e.g.* Click Decl. Ex. 18, p. 109) Moreover, a long list of Federal Acquisition Regulations were explicitly incorporated into the contracts. (*See e.g.* id. at p. 118) The question of SDI's actual compliance is not at issue. But it is clear that its compliance with federal regulations was the *sine qua non* of payment because the contract specifically requires compliance. *See Hopper*, 91 F.3d at 1267. Accordingly, *Hopper* is not on point and does not control the outcome of the instant case.

### C. *Hopper Does Not Address the Issue of False Implied Certification*

*Hopper* is not controlling for another reason. As United States of America established in its *Amicus Curiae* brief, the *Hopper* court did not address the issue of false implied certification. (Government Brief, p. 5, ll. 16–20). The United States of America decided to file an *Amicus Curiae* brief because "the government remains deeply concerned that case law interpreting and applying the False Claims Act, ... develop in a manner that is consistent with the language and purposes of the Act." (*Id.* at p. 2, ll, 18–21) The government did not take a position on the merits of the case. The government of the United States was concerned because it found SDI's characterization of the law to be erroneous. (*Id.* at ll.5–14). The government filed its *Amicus* brief to contest SDI's assertion that

liability under the False Claims Act cannot be based on the theory of false implied certification. (*Id.*) The Court agrees with the government and finds its interpretation of the False Claims Act consistent with the language and purposes of the False Claims Act.

In *Shaw v. AAA Engineering & Drafting Inc.*, 213 F.3d 519, 531–32 (10th Cir. 2000), the Tenth Circuit stated:

Permitting FCA liability based on a false certification of compliance with a government contract, *whether the certification is express or implied,* ... is consistent with the legislative history of the 1986 Amendments to the FCA. *See* S.Rep. No. 99–345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266. The Senate Committee on the Judiciary noted a false claim under the FCA "may take many forms, the most common being a claim for goods or services not provided, *or provided in violation of contract terms, specification, statute, or regulation."* S.Rep. No. 99–345 at 9, *reprinted in* 1986 U.S.C.C.A.N. at 5274 (emphasis added). *Shaw*, 213 F.3d at 531.

In *Shaw, supra*, 213 F.3d 519, the defendant contractor was liable under the implied certification theory for submitting monthly invoices to the government even thought the invoices did not contain any explicit false or fraudulent statements: "Defendants assert that the monthly invoices which they submitted could not be false or fraudulent because the invoices only billed the amount called for by the

---

loss. Each and every time SDI entered into a contract, it warranted that it would comply with and abide by Government regulations. It is alleged that SDI's failure to abide by those regulations led to environmental pollution. The government's loss is caused by the pollution. Thus, pursuant to *Holder*, it is apparent in the instant case that the government's loss-the pollution-was triggered by SDI's alleged false warranty and promise to

abide by environmental regulations. As the Government points out in its *Ex Parte* Request For Leave To File *Amicus Curiae* brief, failure to hold SDI to its promise would greatly weaken the Government's efforts to combat fraud in Government programs. (Plessman Decl., p. 5.) It could potentially rob the government of any power to hold parties to contractual promises to abide by federal regulations.

fixed price contract and did not contain any factual misrepresentations regarding either monthly billings or AAA's equitable adjustment request." *Id.* at 531. As in the instant case, the United States of America appeared as *Amicus Curiae* to argue that liability under the FCA is proper when based on an implied false certification theory. *Id.* The court held "FCA liability under § 3729(a)(1) may arise even absent an affirmative or express false statement by the government contractor." *Id.* at 532.

The government cites numerous other cases to support its position on the false implied certification theory (Government Brief, at pp. 3–8). In *Ab–Tech Const., Inc. v. U.S.* 31 Fed.Cl. 429, 434 (Fed.Cl.1994), for example, the Court of Federal Claims determined that defendant's submission of "payment vouchers represented an implied certification... of its continuing adherence to the requirements for participation in the 8(a) program. Therefore, [defendant] ... caused the Government to pay out funds in the mistaken belief that it was furthering the aims of the 8(a) program. In short, the Government was duped by Ab–Tech's active concealment of a fact vital to the integrity of that program. The withholding of such information—information critical to the decision to pay—is the essence of a false claim." *Ab–Tech Const., supra,* 31 Fed.Cl. at 434.

As in *Ab–Tech,* in the instant case SDI is accused of withholding vital information regarding compliance with federal regulations. *See id.* Accordingly, liability is appropriate. *See Scolnick v. United States,* 331 F.2d 598 (1st Cir.1964); *Murray & Sorenson v. United States,* 207 F.2d 119, 124 (1st Cir.1953); *Mikes v. Straus,* 274 F.3d 687, 699–700 (2nd Cir.2001); *see also United States ex rel. Augustine v. Century Health Services, Inc.,* 289 F.3d 409, 415 (6th Cir.2002); *United States ex rel. Bidani v. Lewis,* 264 F.Supp.2d 612 (N.D.Ill. 2003); *United States ex rel. Barrett v.*

*Columbia/HCA Health Care Corp.,* 251 F.Supp 2d 28 (D.D.C.2003); *United States ex rel. Pogue v. Diabetes Treatment Centers ("Pogue II"),* 238 F.Supp.2d 258 (D.D.C.2002); *United States ex rel. Franklin v. Parke–Davis,* 147 F.Supp.2d 39, 51 (D.Mass.2001) ["It is true that the FCA cannot be used to enforce compliance with every federal law or regulation ... Nonetheless, the FCA *can* be used to create liability where failure to abide by a rule or regulation amounts to a material misrepresentations (*sic*) made to obtain a government benefit."]; *United States v. NHC Healthcare Corp.,* 115 F.Supp.2d 1149, 1155 (W.D.Mo.2000); *and BMY—Combat Sys. Div. of Harsco Corp. v. United States,* 38 Fed.Cl. 109, 125 (Fed.Cl.1997).

Pursuant to the cases cited, *supra,* the Court finds that the false implied certification theory is consistent with the language and spirit of the FCA. *Hopper,* 91 F.3d 1261 does not discuss the theory of implied certification. Accordingly, *Hopper* does not control the outcome of the instant case. Defendant SDI may be liable under the FCA for failure to comply with federal regulations, whether or not affirmative certification of compliance was required.

### D. *Hopper is Otherwise Distinguishable*

Finally, it is apparent that *Hopper* may be distinguishable on other grounds. In *Hopper,* the court denied the plaintiff's cause of action under the False Claims Act because compliance with regulatory provisions was not material to payment for special education programs. *See Hopper,* 91 F.3d at 1266–67. In the instant case, however, the contracts specifically state that SDI must comply with a series of laws and regulations. (*See e.g.* Johnson Decl., Ex. 1, p. 32; *and* Click Decl. Ex. 18, p. 118) For example, SDI had to comply with the Clean Air and Water Act (Johnson

Decl., Ex. 1, p. 32) pursuant to 48 C.F.R. 52.223–2. Specifically, SDI agreed "to comply with all the requirements of section 114 of the Clean Air Act (42 U.S.C. 7414) and section 308 of the Clean Water Act (33 U.S.C. 1318) ... and all regulations and guidelines issued to implement those acts before the award of this contract." 48 C.F.R 52.223–2. Similarly, SDI agreed to abide by the Federal Wage and Overtime guidelines described in 48 C.F.R 52.222–4. (*See e.g.* Click Decl., Ex. 18, p. 118) Unlike *Hopper*, money was not automatically dispersed to the Defendant in the instant case on the basis of demographics. The regulations were there for a reason.

This Court is reluctant to hold that those provisions are immaterial to the contract. For example, if two entirely private companies entered into a contract for the manufacture of textiles and the contract specified that the supplier was not to use illegal immigrants as part of the workforce, that contract term would probably be material. The buyer might want to avoid any chance of liability for employing illegal labor. Similarly, in the instant case, Raytheon undoubtedly would like to avoid any liability that might attach to an environmental clean-up. The government would also probably like to reduce the risk of pollution and clean-up. The cost of labor and the cost of compliance with environmental regulations are factored into the price paid and offered in all government contracts. "The FCA was enacted during the Civil War with the purpose of forfending widespread fraud by government contractors who were submitting inflated invoices and shipping faulty goods to the government." *Hopper*, 91 F.3d at 1265–66. If SDI used child labor, for example, it would be difficult to say that there would be no liability under the False Claims Act for failure to abide by federal labor laws. Similarly, if SDI is ignoring important aspects of the contract in order to increase its profits, i.e., environmental and safety

regulations, it is possible that a cause of action might lie under the False Claims Act. *See id.*

Furthermore, some of the regulations listed in the contracts, including 48 C.F.R. 52.223–14, impose a duty to report the release of certain toxic chemicals. Defendant SDI claims that it never released the requisite threshold of toxic chemicals to trigger the reporting requirement. (Welsh Decl., p. 20) However, the attached declaration attesting to the release of toxic chemicals is little more than self-serving and controverted testimony. (*See id.*) Accordingly, the instant case is distinguishable from *Hopper* because SDI may not have complied with material aspects of a government contract that would have reduced SDI's profit margin and necessarily altered the relationship between SDI, its competitors, the general contractors, and the government.

E. *The Facts Are Disputed as to Whether Certification Is Required.*

■ In the instant case, however, Plaintiff presented the Court with an SDI contract that apparently conditions the receipt of funding on the proper certification of compliance with the Clean Water Act and Clean Air Act. (Holder Decl., Ex. A, "Raytheon Contract" pp. 6,7, & 10) On page ten of its contract with Raytheon (Holder Decl., Ex. A), there is a list of four certifications that had to be "Signed and Returned to Raytheon Prior to Placing P.O." (*Id.*) The list includes a "Clean Air and Water Certification." (*Id.*) The same contract also includes an explicit promise to abide by FAR 52.223–2 and 52.223–14. (*Id.*) These promises give rise to a triable issue of fact as to whether SDI is liable for filing an explicit or implicit false certification.

Furthermore, in view of the fact that the parties have narrowed their arguments to

the alleged non-compliance with specific environmental laws and regulations as they relate to specific contracts, it is no longer credible for SDI to argue that the complaint should be dismissed pursuant to Rule 9(b) due to lack of specificity.

Regarding SDI's argument for summary judgment on Holder's Reverse False Claim, in its Motion for Summary Judgment (MSJ P. & A., at pp. 17–18), SDI does not cite any law to support its argument. Moreover, SDI's argument is based on the assumption that false implied certification is an invalid premise for liability. (MSJ P. & A., p. 18, ll. 1–11) However, that assumption is incorrect.

### IV. *RULING ON MOTION FOR RE-CONSIDERATION*

It is hereby ORDERED that Defendant's Motion for Reconsideration is hereby DENIED. Parties shall bear their own costs.

### V. *MOTION TO CONTINUE TRIAL DATE*

The parties are in agreement that a short continuance is warranted. (*See e.g.* SDI's Response to Motion to Continue, p. 8. ll.24–26.) Indeed, it appears that the controversy over the trial date should have been resolved by stipulation. (*See id.*) The pleadings filed by both parties go into extraordinary minutiae regarding who did what to whom, and when. For example, the Court was informed that on October 16, 2003, counsel for Defendant, Mr. Newhouse, retrieved fresh ice for opposing counsel's soft drink. (Newhouse Decl., p. 9 ll.25–28.) In addition, the Court is pleased to know that it takes just five minutes to walk from the offices of Defendant's counsel to the offices of Plaintiff's counsel. (*Id.* at p. 8, ll.4–6). (*See e.g.* Corrales Decl., p. 2) All discovery matters have been referred to the Magistrate Judge.

Plaintiff asks for a sixty-day continuance. (Motion, at p. 11) Mr. Newhouse is apparently in trial during February. (Newhouse Decl., at p. 10, ll.24–26; *and* Plaintiff's P. & A., p. 8, ll.6–9). It appears that Defendant's co-counsel, Joe Click, might be unavailable until April because he is also scheduled for trial. (*See id.*) Accordingly, the trial is hereby CONTINUED and set for **Tuesday, March 30, 2004** at **9:00 a.m.**; and the Pretrial Conference is hereby CONTINUED and set for **9:00 a.m.** on **Monday, March 22, 2004**. The parties are FURTHER ORDERED to appear for a settlement conference on **Friday, March 12, 2004 at 8:00 a.m.**

IT IS SO ORDERED.