HIGGINSON, Circuit Judge,
concurring:
Courts have struggled with. delimiting liability under the False Claims Act (“FCA”). Among the issues wrestled with have been whether to distinguish “factually false” from “legally false” claims, whether to recognize “express” and “implied” certification theories of liability, and whether to limit liability under those theories to cases where the government conditions payment on a certification of compliance (the “prerequisite” requirement).
“Courts have created these categories in an effort to clarify how different behaviors can give rise to a false or fraudulent claim,” United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 385 (lst Cir.2011), and to maintain what we have deemed the “ ‘crucial distinction’ between punitive FCA liability and ordinary breaches of contract,” United States ex rel. Steury v. Cardinal Health, Inc. (“Steury I”), 625 F.3d 262, 268 (5th Cir.2010). “Judicially — created categories sometimes can help carry out a statute’s requirements, but they can also create artificial barriers that obscure and distort those requirements.” Hutcheson, 647 F.3d at 385.
The majority opinion bases its holding that Steury failed to state a claim under the FCA on its judgment that, even if this court were to adopt the implied false certification theory of FCA liability, Steury’s third amended complaint did not properly allege that “a certification was a ‘prerequisite’ to the payment sought.” But “[t]he text of the FCA does not refer.... to ‘express certification’ or ‘implied certification.’ Indeed, it does not refer to ‘certification’ at all.” Hutcheson, 647 F.3d at 385. Nor does the FCA contain the term “prerequisite.” These are judicial constructs that, in my view and the view of another circuit court, “do more to obscure than clarify the issues before us.” Id. at 385-86.
I would redirect attention to the plain language of the statute. The FCA subjects a person to liability for “knowingly present[ing] ... a false or fraudulent claim for payment.” 31 U.S.C. § 3729(a)(1)(A). Courts initially distinguished false from fraudulent claims in the civil FCA context,[1] but these concepts have merged over time. See Claire M. Sylvia, The False Claims *209 Act: Fraud Against The Government § 4:26 (2d ed.2013) (“Courts do not always distinguish between ‘false’ claims and ‘fraudulent’ claims, and often simply refer to ‘falsity’ or, as the statute’s title does, ‘false claims.’ ”).
“As a walk through Title 18 and other titles of the United States Code reveals, Congress has long honored the distinction [between falsity and fraud] in criminalizing many types of conduct.” United States v. Kurlemann, 708 F.3d 722, 728 (6th Cir.2013) (interpreting 18 U.S.C. § 1014). Criminal analogues of the FCA make it a federal crime to present a claim to the government knowing it to be “false, fictitious, or fraudulent,” 18 U.S.C. § 287, and to knowingly and willfully make a “materially false, fictitious, or fraudulent statement or representation” on a matter within the jurisdiction of the United States, 18 U.S.C. § 1001(a). These statutes have proved workable without judicial embellishment by employing traditional, common-sense understandings of what it means for a statement or claim to be “false” and “fraudulent.”
The two terms are not co-extensive. Kurlemann, 708 F.3d at 728 (“ ‘False’ and ‘fraudulent’ representations do not cover the same thing.”). Falsity requires “a ‘factual assertion’ capable of confirmation or contradiction.” Id. (citing Williams v. United States, 458 U.S. 279, 284, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982)); see also United States v. Shah, 44 F.3d 285, 294 n. 16 (5th Cir.1995) (“A statement is false if it was untrue when made and then known to be untrue by the person making it”).
Fraud has long been understood to include a broader range of deceptive conduct. “The gist of the action,” in the Supreme Court’s words, “is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.” Stewart v. Wyo. Cattle Ranche Co., 128 U.S. 383, 388, 9 S.Ct. 101, 32 L.Ed. 439 (1888); see also Black’s Law Dictionary 731 (9th ed.2009) (defining fraud as “[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment”).
Kurlemann, 708 F.3d at 728-29.[2]
I would favor restoring Congress’s statutory distinction between falsity and fraud, and using traditional, common-sense understandings of those terms to decide whether Steury and plaintiffs like her state a claim under the FCA. Steury did not specifically allege in the operative complaint that Cardinal Health knew of material product defects but, with the intent to deceive, sought to collect payment from the government nonetheless — indeed, she stated that “no specific intent to defraud the government is required” to ■ prove a false claim. So our focus must in this case be on whether Cardinal Health’s claim for payment was a false one: whether it contained a falsifiable assertion that was untrue when made.
The Supreme Court has answered a conceptually similar question: whether the deposit of a check without sufficient funds to support it constitutes a false statement under 18 U.S.C. § 1014. See Williams, *210 458 U.S. at 284-87, 102 S.Ct. 3088. The government argued that a check not supported by sufficient funds contains an implicit false statement or representation that the account contains sufficient funds to cover it. Id. at 285-86, 102 S.Ct. 3088. The Supreme Court granted that the government’s implied certification theory was a plausible, functional understanding of how checks work, but expressed “reluc-tan[ce] to base an expansive reading [of the statute] on inferences drawn from subjective and variable ‘understandings.’ ” Id. at 286, 102 S.Ct. 3088. “[Technically speaking,” the Court reasoned,
a check is not a factual assertion at all, and therefore cannot be characterized as “true” or “false.” Petitioner’s bank checks served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts. Each check did not, in terms, make any representation as to the state of petitioner’s bank balance.
Id. at 284-85, 102 S.Ct. 3088.
Just as an insufficient funds check alone makes no falsifiable assertion, neither does an unadorned invoice contain a false claim. Steury did not allege in the operative complaint that the invoice presented by Cardinal Health contained, on its face, a factual assertion capable of confirmation or contradiction that was untrue when made, so the claim is not “false” under the FCA. It may be true, as the appellant and government reason, that by presenting a claim for payment, Cardinal Health “implicitly certified” that the infusion pumps were “merchantable”; that is one plausible, functional understanding of how invoices work. Not surprisingly, the Supreme Court has cautioned that this “ ‘common understanding’ [is] a particularly fragile foundation” upon which to base an interpretation of a federal statute with severe penalties. Id. at 286 n. 7, 102 S.Ct. 3088.
Not only does it depart from the plain meaning of the FCA, “the implied certification theory is prone to abuse by the government and qui tam relators who, seeking to take advantage of the FCA’s generous remedial scheme, may attempt to turn the violation of minor contractual provisions into an FCA action.”[3] United States v. Sci. Applications Int’l Corp., 626 F.3d 1257, 1270 (D.C.Cir.2010). To cabin liability under the implied certification theory, many courts have limited its application to situations in which the defendant makes an implied certification of compliance with the material terms of the contract between the parties, a prior express certification, or the statutes or regulations governing the government program at issue. See Susan C. Levy, Daniel J. Winters, & John R. Richard, The Implied Certification Theory: When Should The False Claims Act Reach Statements Never Spoken Or Communicated, But Only Implied?, 38 Pub.- Cont. L.J. 131, 131-52 (2008) (collecting cases). In so doing, however, some courts have “adopt[ed] a circumscribed view of what it means for a *211 claim to be false or fraudulent.” Sci. Applications Int’l Corp., 626 F.3d at 1270. “[T]o avoid foreclosing] FCA liability in situations that Congress intended to fall within the Act’s scope,” United States ex rel. Jones v. Brigham & Women’s Hosp., 678 F.3d 72, 85 (1st Cir.2012) (quoting Hutcheson, 647 F.3d at 387), I would favor instead restoring Congress’s statutory distinction between falsity and fraud, and using traditional, common-sense understandings of those terms, in combination with “strict enforcement of the Act’s materiality and scienter requirements,” id. (quoting Sci. Applications Int’l Corp., 626 F.3d at 1280), to maintain the “ ‘crucial distinction’ between punitive FCA liability and ordinary breaches of contract,” Steury I, 625 F.3d at 268.
I respectfully concur.

. E.g., United States v. TDC Mgmt. Corp., 24 F.3d 292, 297 (D.C.Cir.1994) ("In 1982, Congress recodified the False Claims Act to substitute, 'without substantive change, ... simple language ... for awkward and obsolete terms.’ Before this recodification, the False Claims Act forbade knowing presentation of a ‘false, fictitious, or fraudulent claim.’ In re-codifying the Act, Congress eliminated the word ‘fictitious’ but retained both ‘false’ and ‘fraudulent’ as part of the statutory language. We infer from this that Congress distinguished ‘false’ from ‘fraudulent’ claims and presume the distinction to turn on whether the defendant acted with an intent to deceive.”) (citations omitted).

. "[T]he terms ‘knowing’ and 'knowingly,' ” as used in the FCA, “require no proof of specific intent to defraud”; rather, they "mean that a person, with respect to information — (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.” 31 U.S.C. § 3729(b)(1)(A)-(B).

. In many cases, including this one, it is difficult to discern what implied certifications are even at issue. Steury alleged in her initial and amended complaints that Cardinal Health implicitly certified that its products were "safe and reliable”; she alleged in her second amended complaint that the implicit certification was that the products were "free from defects,” "fit for the purposes for which they were designed to be used,” and "fit for the particular purpose for which they were being sold”; she alleged in her third amended complaint that the implicit certification was that the products were "merchantable,” which it defined as "reasonably fit for the ordinary purposes for which such item is used,” "at least average, fair, or medium-grade quality,” and not "unreasonably dangerous.”